JOHN E. GRAHAM *against* THE STATE OF ARKANSAS.

ERROR *to the City Court of Little Rock.*

GRAHAM
*vs.*
THE STATE

The act of 1838, which incorporated the city of Little Rock, and conferred jurisdiction upon the City Court thereof in certain criminal and penal cases, does not conflict with the organic law of the Territory, or the Constitution of the State.

The organic law expressly authorized the Legislature to institute and establish courts inferior to the Superior Court, and to fix their respective jurisdictions, except in cases where the United States was a party.

By the Constitution, the City Court was not abrogated, or its jurisdiction taken away.

Under a law to punish any person " who shall be guilty of betting any money or other valuable thing," on certain games, among which faro is named, the allegation in the indictment that the defendant " did game, play and bet with cards with certain persons, at a certain unlawful game commonly called faro;" and that the same defendant " did, then and there, by playing at the same unlawful game commonly called faro, with the said persons, at one time and sitting, win of the said persons a large sum of money, to wit, one dollar, &c., is sufficient. No rational man can hear this charge read, without understanding from it that the defendant was guilty of betting money at a game commonly called faro.

The City Court being a court of limited and special jurisdiction, the allegation in the indictment, that the offence was committed " *at* the City of of Little Rock," is a sufficient allegation that it was committed within the jurisdiction of the court, at least in indictments for misdemeanors, where only a pecuniary fine is imposed. So much strictness is not required in these indictments, as in indictments for offences of a higher grade.

The word "at" is often synonimous with the word " in," and may with propriety be so understood and regarded, in the venue in an indictment for a misdemeanor.

An objection to an indictment for a misdemeanor, founded on a single statute, that the conclusion thereof is in the plural, instead of the singular number, is not valid, and will not be allowed; and an indictment for a misdemeanor in the City Court concluding " contrary to the laws and statutes of the Territory of Arkansas, and the ordinances of the city of Little Rock," is good.

Where the defendant pleads guilty to such an indictment, the record should show whether he elected to have his fine assessed by the court or by a jury.

The statute and ordinance having fixed the fine at not less than one hundred nor more than two hundred dollars, the City court had no power to impose a fine of only thirty dollars. The court had no authority either to mitigate or increase the punishment.

The plaintiff in error was indicted for playing at faro, before the City Court of Little Rock, and pleaded guilty to the charge, whereupon the court below gave judgment for thirty dollars fine and costs, and that ".in default of the payment of such fine and costs, that the said *John E. Graham* be committed to the common jail of the county of Pulaski, for and during the space of three months, from and after the date of this sentence, unless said fine and costs be sooner paid, or the prisoner be discharged by due course of law."

To reverse this judgment the said *John E. Graham* prosecuted his

LITTLE ROCK, July, 1838.

GRAHAM

vs.

THE STATE

writ of error   The indictment and all the facts in the case are so fully set forth in the opinion, as to render it entirely unnecessary to repeat them here.

TAYLOR, for plaintiff in error:

The judgment is erroneous:

1st. Because the court had no jurisdiction of crimes or misdemeanors.   *Dig.* 29, 35, 38, 41—*Acts of* 1835, p. 58.

2d. The indictment does not aver that the offence was committed, or any act was done within the jurisdiction of the court.   1 *Peters,* 237—6 *Com. Dig.* 52, 88, 89—1 *Durnford & East,* 151, 316, 317—4 *Com. Dig.* 691.

3d. The indictment concluded against the statutes of the State and ordinances of the city.   1 *C. C. Law,* 238—1 *Chitty Pld.* 231 —1 *Chit. C. Law.* 244—*Dig.* 333, 322—4 *Com. Dig.* 691.

4th. It does not show the circumstances which bring the offence within the definition of the offence, as defined by the ordinances.— 1 *C. C. Law,* 231, 235—Law of gaming, *Dig.* 205.

5th. It joins different offences subject to different punishments, and joins several offences in the same count.   1 *Com. Dig.* 224, 225. See *Indictment and Ordinance.*

6th. The judgment is for three months' imprisonment, which is no part of the punishment by the ordinance.   See *The Ordinance.*

CLENDENIN, *Pros. atto. contra:*

The defendant in error insists that the offence charged in said indictment is contrary to the 3d Section of the act for the prohibition of gaming.   See *Digest,* p. 205.   That the City Court had full power to enter up said judgment against defendant—*Act of Incorporation.* That the offence is properly charged in said indictment—*Archbold Crim. Law,* 27, 28; *Chitty Crim. Law,* 1st vol. 229, 230, and that the conclusion of said indictment is legal, formal and according to approved precedent—*Archbold,* 57, 58; 1st *Chitty Crim. Law.* 244, 245. That the time for objecting to informality or duplicity in pleading, has been passed, as it should have been objected to in the court below on demurrer, or in arrest of judgment, and not after confession of judgment, by writ of error.   *Archbold Plea. and Evi.* 96; *Crim. Law,* 55, *and Virginia Cases,* 2d vol. p. 17—it is decided that if a defendant confess judgment in a presentment for gambling, although

the presentment might have been defective on a demurrer, the judgment ought not to be reversed.

RINGO, *Chief Justice*, delivered the opinion of the Court:

This is a writ of error with supersedeas, to reverse a judgment of the City Court of Little Rock, against *John E. Graham*, for betting at *faro*, contrary to the statutes of the State, and the ordinances of the city.

At the October Term, 1838, the Grand Jury returned into court the indictment against him, a true bill. The first count is as follows, viz:

"STATE OF ARKANSAS, } *City Court of the City of*
"CITY OF LITTLE ROCK. } *Little Rock, October Term*
} *A. D. 1838.*

" The Grand Jurors of the State of Arkansas chosen, tried, elected, empannelled, sworn, and charged to enquire in and for the body of the City of Little Rock, on their oath do present: That *John E. Graham*, late of said city, being a person of ill name, fame and dishonest conversation, on the first day of October, in the year *aforesaid*, at the City of Little Rock aforesaid, with force and arms, did game, play, and bet with cards with sundry persons to the jurors aforesaid as ye t unknown, at a certain unlawful game commonly called *faro*: and that the said *John E. Graham* did, then and there, with force and arms, by playing at the said unlawful game, commonly called *faro*, with the said persons to the jurors aforesaid unknown, at one time and sitting, win of the said persons to the jurors aforesaid unknown, a large sum of money, to wit, the sum of one dollar, lawful money of the United States, to the great damage of the good people of the State of Arkansas, contrary to the laws and statutes of the State of Arkansas, and the ordinance of the City of Little Rock aforesaid, and against the peace and dignity of the State of Arkansas."

The second count charges—"That *John E. Graham*, being a person of ill name, fame and dishonest conversation, on the said first day of October, in the year aforsaid, at the City of Little Rock aforesaid, with force and arms, did game, play and bet, with cards, with sundry persons to the jurors aforesaid unknown, at a certain unlawful game commonly called *faro*: and that the said *John E. Graham*, with force and arms, did then and there, by playing with the said persons to the jurors aforesaid unknown, at the said unlawful game commonly called *faro*, at one time and sitting, *unlawfully lose* to the said persons to the jurors aforesaid unknown, a large sum of money, to wit, the sum of one

LITTLE ROCK, July, 1838.

GRAHAM *vs.* THE STATE

LITTLE
ROCK,
July, 1838.
GRAHAM
*vs.*
THE STATE

dollar, lawful money of the United States, to the evil example of all others, in like manner offending, contrary, &c." concluding like the first count.

The 3d and 4th counts are in form and effect, the same as the 1st and 2d, except that instead of charging the accused with the winning and losing of money, as in the two former, the 3d charges him with winning, the 4th with losing "certain pieces of money of great value, to wit, the value of one dollar, lawful money of the United State s."

To this indictment, the said *John E. Graham* entered his appearance, and in open Court, "confessed that he had been guilty of playing at *faro*, as charged in the indictment preferred against him." This entry then follows in the record; "whereupon, it is ordered by the court, that the said State of Arkansas have and recover of said *John E. Graham, thirty dollars as a fine;* and that he pay all costs in and about this suit expended; *and in default of the payment of such fine and costs, that the said John E. Graham be committed to the common jail of the county of Pulaski, for and during the space of three months, from and after the date of this sentence, unless said fine and costs be sooner paid, or the prisoner be discharged by due course of law."*

Upon this record, the plaintiff assigns for error:

1st, That there is no offence charged in the indictment.

2d, That the supposed charge in the indictment is not an offence by statute or common law, or by the ordinances of said City.

3d, That the several counts in said indictment conclude against the laws and statutes of the State of Arkansas, and the ordinances of the City of Little Rock; whereas, there are no such laws, statutes, or ordinances, as in said indictment is supposed.

4th, That the conclusion to said indictment is uncertain, doubtful, informal, and insufficient.

5th, That the said judgment is in favor of the State; whereas, by the law of the land, it ought to have been in favor of said *Graham.*

6th, That by the judgment, said defendant (*Graham*) is committed for the term of three months, without bail or mainprize; which is not warranted by law.

7th, That the City Court had no jurisdiction of this case, nor any criminal jurisdiction whatever.

By this assignment of error, three questions are presented:

1st, Had the City Court jurisdiction in this case?

2d, Is the indictment valid?

3d, Is the judgment legal?

These will be examined in the order in which they are stated.

LITTLE
ROCK,
July, 1838.

GRAHAM
vs.
THE STATE

By an act of the Legislature of the Territory of Arkansas, approved the 2d day of November, 1835, Little Rock was incorporated a City. After defining the boundary and prescribing the limits thereof, the act declares that "the same shall be and the same are hereby erected into a corporate city forever; and shall henceforth be called, designated and known, by the name of the City of Little Rock."— Having thus created the corporation, the Legislature by the same act proceeded to create the several offices, deemed necessary for the government of the City, and provided for the election and qualification of the requisite officers to fill them, and defined and prescribed their respective powers and duties.

Among the offices thus created, was that of the City Court, in relation to which there is, in the 5th section of said act, the following provisions: "That, for the purpose of enforcing the bye-laws and regulations aforesaid, there shall be constituted in said City of Little Rock a *City Court*, which shall be a court of record, to be holden by one Judge, who shall not be the mayor or an alderman of said City, but shall be elected by the qualified voters of said City, at the same time, and in the same manner, of the election of the other officers of said City; who shall hold his office for one year, and who shall also be a resident free-holder of said City; which said City Court shall be holden in said City, at such place as the mayor and aldermen may direct, on the first Monday in each month, throughout the year; and shall continue to sit at each term thereof, until the business of said court shall be disposed of."

And in the seventh section, it is enacted, "That the said City Court shall have *exclusive jurisdiction* without the privilege of appeal, of all offences which are less than felony at common law, *which shall be committed within the limits of the City of Little Rock, in violation of the bye-laws, ordinances, or regulations of said City:* Provided, that any person aggrieved may have the right to sue a writ of error out of the Superior Court of said Territory, and there have his case examined according to law, and confirmed, or reversed and awarded for trial *de novo*, as in civil cases in the Circuit Court." *Acts A. T.*, 1835, page 55.

The charter thus granted, was accepted by the inhabitants of the Territory thus incorporated, and persons chosen to fill the several of-

LITTLE
ROCK,
July. 1838.

GRAHAM
*vs.*
The State

fices created by the charter for the preservation of peace and good order, and the better government of said city and the inhabitants thereof. This being done, their corporate authority was fully and legally established, and might have been properly exercised to the fullest extent, as authorized by their charter.

But it is contended by the plaintiff in error that the provisions of the act of 1835 are in conflict with the organic laws of the late Territory, and the Constitution of the State, so far as they attempt to confer on the City Court jurisdiction in criminal or penal cases, and consequently to that extent void.

After a careful examination of the organic law and constitution, we have been unable to discover any conflict whatever between them and the act of 1835, in regard to the question now before us.

By the act of March 2d, 1819, (sec. 7, *Digest*, p. 38,) it was provided, "that the judicial power of the Territory shall be vested in a Superior Court and in such inferior courts as the Legislative department of the Territory shall from time to time institute and establish, and in Justices of the Peace. The Superior Court shall have jurisdiction in all criminal and penal cases, and exclusive cognizance of all capital cases." In the act of April 17th, 1828, there is a provision that the Legislature shall be authorized in all cases except when the United States is a party, to fix the respective jurisdiction of the District and Superior Courts."

That when any party to a suit is aggrieved by a decision of a Judge holding a District Court except in criminal cases, the party aggrieved shall be at liberty "to remove said suit to the Supreme Court of said Territory for further trial." *Digest*, p. 32, sec's 3, 5.

These were the whole of the provisions of the organic laws having any relation to the subject before us, when the act of 1835 was passed; and it will be at once seen that instead of restricting the power of the Legislature, they expressly authorize it to institute and establish courts inferior to the Superior Court, and to fix their respective jurisdictions in all cases except when the United States is a party, meaning, as is evident from the whole context and tenor of the acts, to leave the Legislature free from any restriction in distributing the judicial power, except in criminal cases arising under the laws of the United States, and in civil cases to which they were a party, in which the jurisdiction is absolutely retained in the Superior Court.

The following are the only constitutional provisions which could

be supposed to have any bearing on the question: "The judicial power of this State shall be vested in one Supreme Court, in Circuit Courts, in County Courts, and in Justices of the Peace.    The General Assem- bly may also vest such jurisdiction as may be deemed necessary in Cor- poration Courts."    *Const.* p. 14.    "The Circuit Court shall have ori- ginal jurisdiction over all criminal cases which shall not be otherwise provided for by law, and exclusive original jurisdiction in all crimes amounting to felony at the common law."

At the time of the adoption of the Constitution the act of 1835 was in force, and the City Court established and organized by and under its authority, was in the possession and full exercise of criminal juris- diction under its provisions, in cases not considered felony at common law.    And although it is not expressly embraced by the language used in the Constitution, yet the convention, with a full knowledge of its existence and authority, instead of destroying the former or restrict- ing the latter, expressly provided that the Legislature might vest in Corporation Courts such jurisdiction as might be deemed necessary, and declared that all laws in force in the Territory, after the adoption of the Constitution, and not repugnant thereto, should remain in force until they expired by their own limitation or should be altered or re- pealed by the General Assembly.    *Const. Schedule,* sec. 2, p. 19.

The ordinance of 18th December, 1835, prohibits the betting of money or any other valuable thing on any gaming table commonly called A. B. C., or E. O., roulette, or rouge et noir, or *faro,* or any other gaming table or bank of the same or the like kind, and inflicts a penal- ty upon every person who shall be convicted thereof in the City Court.

From this view of the law, it appears to us that the provisions of the act of 1835, so far as they regard the present question, are not in con- flict with the organic law of the Territory, or the provisions of the Constitution, and that they were in full force at the time the proceed- ings before us were had in the City Court.    It results, therefore, that the City Court had jurisdiction and legal cognizance of this case.

The second question is one of more importance and greater difficul- ty.    The language used in the several counts in this indictment is not as explicit as it might have been, nor as comprehensive as that found in many of the old forms of indictments, and may be liable to some criticism.

The charge in every indictment must be sufficiently explicit to sup- port itself; no latitude of intention can be allowed to make it include

LITTLE
ROCK.
July, 1838.

GRAHAM
vs.
THE STATE

any thing more than is expressed. *2 Burrows,* 1127; 2 *M. & S.,* 381. The facts of the crime must be stated with as much certainty as the nature of the case will admit. *Cowper,* 682; 5 *T. R.,* 611, 623.— Therefore it has been held that an indictment charging the defendant with obtaining money by false pretences, without stating what were the particular pretences, is insufficient. 3 *T. R.,* 481.

To the general rule there are some exceptions, as in the cases of indictment for being a common scold or barrator, or for keeping a disorderly house, or for conspiracy—and perhaps some others. 2 *T. R.,* 586; 1 *T. R.,* 754; 2 *B. & A.,* 205. But if the sense be clear, nice objections ought not to be regarded. 5 *East.,* 259; *Chitty's C. L.,* 163. Every indictment ought to contain a complete description of such facts and circumstances as constitute the crime, without inconsistency or repugnancy; and in particular cases where precise technical expressions are required to be used, there is no rule that other words shall be employed than such as are in ordinary use; or that in indictments, or other pleadings, a different sense is to be put upon them than what they bear in ordinary acceptation, and if, when the sense may be ambiguous, it is sufficiently marked by the context or other means, in what sense they are intended to be used, no objection can be made on the ground of repugnancy. *Rex* vs. *Stevens,* 5 *East,* 244.

The first section of the act of 1829 (*Digest,* p. 205) enacts, "That if any person or persons shall be *guilty of betting any money or other valuable thing* on any of the games named in the second section of this act, or on or at any kind of gambling table of any name, description, or denomination whatever, on being convicted thereof, shall pay a fine, *not less than one hundred dollars, and not more than two hundred dollars;* and on default of paying such fine, shall be committed to prison, there to remain until such fine and costs of prosecution shall be paid, or otherwise discharged by law; *Provided, however,* That all such persons shall be at liberty to confess guilt, and to be fined in the manner prescribed by the second section of this act."

The games named in said second section referred to in the third section above recited, are those "commonly called A. B. C., or E. O., roulette, or rouge et noir, or any *faro,* or any other gaming table or bank of the same kind;" and the manner therein prescribed for the confession of judgment referred to in the proviso to the second section, is the following: "*Provided,* That if any person or persons arrested and brought before a Justice of the Peace under the provisions of this

LITTLE ROCK,
July, 1838.

GRAHAM
*vs.*
THE STATE

act, shall plead guilty to the charge, the said Justice shall proceed to fine such person or persons in any sum not less than thirty dollars, nor more than fifty dollars; but no plea of guilty, under this proviso, shall bar an indictment, unless the party so fined shall, previous to the next ensuing term of the Circuit Court of the county where said fine may be assessed, file with the Clerk of the said Court a receipt of the Justice of the Peace before whom the fine was assessed, or the Sheriff of the county."

The object of that certainty required in an indictment, is to notify the accused of the specific charge made against him, and to show the court that the offence charged is indictable. The phraseology should therefore be so explicit and unambiguous as to be intelligible to the accused and to the court, and prevent another prosecution for the same offence, in the event of a conviction or acquittal on the merits.

In this case it is necessary to show that *John E. Graham* was *guilty of betting money or some other valuable thing*, on some one of the games named in the second section of the act of 1829, with the time when, and the place where, he was so guilty.

The plaintiff insists that it is not alleged in the indictment that he bet, or was guilty of betting money or any thing valuable at or on the game commonly called *faro*, within the language of the statute or ordinance, (the same language being used in both), but simply that *"by playing at,"* instead of *"betting on,"* said game, he lost and won money, &c., and therefore, he is not charged with any offence comprehended by the statute.

This argument, although plausible and ingenious, is not, in our opinion, well sustained by the facts; for it is charged substantially, though not in the literal language of the act, that *John E. Graham*, on the 1st day of October, 1836, did game, play, and bet with cards with certain persons at a certain unlawful game commonly called *faro;* and that he, the said *John E. Graham*, did then and there, by playing at the said unlawful game commonly called *faro, with the said persons*, at one time and sitting, *win of the said persons* a large sum of money, to wit: one dollar of lawful money, &c.

The language used, as before remarked, is not as explicit as it might have been; yet it does in substance, and with such precision and certainty as to be easily comprehended and understood, in terms not at all calculated to mislead or deceive either the accused, the court, or the jury, charge the accused with betting with certain per-

LITTLE
ROCK,
July, 1838.
GRAHAM
vs.
THE STATE sons to the jurors unknown, at a game commonly called *faro;* and at the same time and place, by playing at the same game, with the same persons, unlawfully winning of the same persons one dollar of the lawful money of the United States. This is the substance of the charge as stated in the first count, and the language of each count, as to the present question, is substantially the same—hence it results that if this is sufficient, each count is good.

No rational mind can hear the charge read without understanding from it that *John E. Graham* was guilty of betting money, or pieces of ivory of some value, at an unlawful game commonly called faro, at a specified place, and on a designated day, contrary to the letter and policy of the statute and ordinance.

It is also contended that the City Court is a court of special and limited jurisdiction, and therefore it should have been charged in the indictment, "that the offence was committed within the jurisdiction of the court."

The City Court had by law jurisdiction of all offences less than felony at common law committed within the chartered limits of the city in violation of the bye-laws, ordinances, or regulations of the city. The indictment charges the offence to have been committed " at the City of Little Rock, and this allegation, like most of the others found in this indictment, is not as explicit as it might have been; and it certainly would have been more in conformity with the approved precedents, to have charged the acts constituting the offence, to have occurred "in" or "within," instead of "at" the city of Little Rock aforesaid; and although we are not prepared to say that this form of stating the venue would be sufficient in indictments for crimes of higher grade, where the consequences of a conviction might be the forfeiture of life, or the infliction of some corporal or infamous punishment, in which class of cases the law requires more exactness and greater certainty' than it does in indictments for mere misdemeanors where upon conviction, a pecuniary fine only is imposed. 1 *Chit. C. L.,* 199, *Marg. Cro. Jac.,* 345.

The offence charged in this indictment is of the latter kind, the punishment extending only to a pecuniary mulct, which cannot exceed two hundred dollars. The word *at,* in common parlance, is frequently used as noting the situation or place where a person or thing is, or something transpired. Thus, in speaking of a place where a person resides, it is commonly said, *he resides at Washington City,* or

*at* New Orleans, or at Little Rock, conveying distinctly in each in- stance, the idea that the person spoken of resides *in* the place named. It is also used by the Legislature to convey the same idea when they say the Superior Court should be holden "at Little Rock, the seat of government of this State." Many illustrations of a similar character might be stated, but we think enough has been said already to show that the words *at* and *in* are often used as synonimous, as well in the laws as in the ordinary language in common use in the country, and in that sense it was evidently used in the indictment before us, and might with propriety be so understood or regarded. We are therefore satisfied that the venue as laid, is sufficient, the indictment being for a misdemeanor only.

The plaintiff in error also insists that the indictment is insufficient for this, that it concludes against the "laws and statutes of the State of Arkansas, and the ordinances of the city of Little Rock," in the plural, when it ought to have been in the singular, there being no such laws, statutes, or ordinances, as in said indictment is supposed.

This objection is not fully sustained by the facts, for there are two independent statutes prohibiting the offence charged in the indictment, one passed in 1813, and the other in 1829. See *Geyer's Digest*, p. 427, and *Steele & McCampbell's Digest*, p. 205. Where there are two statutes which relate to the offence, there have been various distinctions taken respecting the conclusion against the form of the *statutes* in the plural, or *statute* in the singular only. Thus it was formerly holden by several authorities, that where an offence is prohibited by several *independent statutes*, it was *necessary* to conclude in the plural. But now the better opinion seems to be that a conclusion in he singular will suffice, and it will be construed to refer to that enactment which is most for the public benefit. 1 *Chit. C. L.*, 291.— Also, a distinction was formerly taken between the case where an offence is *prohibited by two statutes, and where the indictment cannot be supported upon one singly;* as where by a subsequent provision it is enacted that a former statute shall be executed in a new case, or an additional penalty inflicted; but according to the later opinions, even in this case, a conclusion in the *singular* will be valid; and where one statute continues a former in part, or explains what was doubtful, or regulates its operation, the conclusion should be in the singular, and this will be more important as it is laid down that when the *plural* is used instead of the *singular*, the mistake will be fatal. 1 *Chit. C. L.*,

II

LITTLE
ROCK,
July, 1838.

GRAHAM
vs.
THE STATE

292. However, as to the last instance, there appear to be conflicting decisions. See 2 *Hale*, 173, and no reason is perceived why the unnecessary allegation in the plural may not be rejected, as in cases where an indictment concluding against the *Statute* is held good at common law—1 *Chit. C. L.* 238, 9; or why the conclusion in the singular, where the indictment depends upon more statutes than one, should be adjudged sufficient, and the conclusion in the *plural*, when there is but one statute, fatal. The rule being thus unsettled, and without any uniform current of decisions, on either side, we feel at liberty to adopt that which, in our opinion, is the best calculated to promote the ends of justice, and the practical administration of the criminal and penal laws of the country. This object, we think, may be accomplished without in the least prejudicing the legal rights of the accused, by disallowing the objection to an indictment for a mere misdemeanor, founded upon a single statute, that the conclusion thereof is in the *plural*, instead of the *singular* number. We are, therefore, of the opinion that this objection is not in this case fatal to the indictment.

Having thus examined the several parts of the indictment before us, and seen that all the essential facts are stated, which constitute an offence within the letter and spirit of the statute and ordinance,— therefore if it be not good, the declaration of *Lord Hale* may, with propriety, be applied to the law and criminal jurisprudence of our own country, that "the strictness required in indictments has grown to be a blemish and inconvenience in the law and the administration thereof; and that more offenders escape by the over-easy ear given to exceptions to indictments, than by the manifestation of their innocence; and the grossest crimes have gone unpunished by reason of these unseemly niceties."

We also fully agree with Lord Mansfield, "that tenderness ought always to prevail in criminal cases, so far at least, as take care that a man may not suffer otherwise than by due course of law;" but " that tenderness does not require such a construction of words, (perhaps not absolutely clear and express) as would tend to render the law nugatory and ineffectual, and destroy and evade the very end of it; nor does it require of us, that we should give in to such nice, strained and critical objections as are contrary to its true meaning and spirit." And especially in this country, where the laws are so liberal and benign, and administered with so much mildness, the court should lean against the

technicalities and niceties of ancient times, when more ignorance and greater rigor prevailed. We consider the rule laid down in *Chitty* to be the most safe and just one. " If the sense be clear, nice objections ought not to be regarded." 1 *Chitty, C. L.* 117. 173.

LITTLE
ROCK,
July, 1838:
GRAHAM
, *vs.*
THE STATE

The indictment tested by the above principles and reasoning, will be found to be good and valid.

The third question presents very little difficulty. The plaintiff in error appeared in Court, and pleaded to the indictment, "*that he was guilty of playing at faro, as charged in the indictment.*" This plea having been received and recorded was equivalent at least, to a ver-dict of guilty by a jury; and the accused thereupon stood before the Court legally convicted of the offence of unlawfully betting money, or some other valuable thing on the game of faro, contrary to law.

The laws declare that on conviction for this offence the person con-victed "shall pay a fine not less than one hundred dollars, and not more than two hundred dollars," leaving the precise sum to be deter-mined by the court, or agreeably to the provisions of the act, approved the 26th day of October, 1831, which provides—"That when any person charged with any criminal offence, shall plead guilty, he may at his election, submit the quantum of punishment to the court, or he may have a jury to assess and determine the same. *Dig.* p. 204. The record in this case fails to show any election made by the defendant below, but represents the court as having proceeded upon the confes-sion made, to adjudicate the fine and pronounce judgment therefor. Whatever the fact may have been, certainly in correct practice, the record ought to show the election of the party; and this should appear, whether he waived or demanded his right to a jury, or submitted the matter to the court to assess and determine the quantum of punishment or amount of fine. In either case, however, the assessment to be valid must conform to the law, as well in regard to the quantum, as the qual-ity of the punishment prescribed; and a departure therefrom, in either case, makes the assessment illegal;—and having no foundation in the law, no valid legal judgment can be pronounced upon it. In this case, the court assessed the fine at thirty dollars, and pronounced judgment therefor, with costs, against the defendant below.

To justify or sustain such a proceeding, would be ascribing to the courts and juries in criminal and penal cases, a discretionary pow-er, paramount to all legal restraint, and alike subversive of public justice and the laws of the land. A practice so illegal, and so liable

LITTLE
ROCK,
July, 1838,

GRAHAM

vs.
THE STATE

to be abused, and perverted to the purposes of persecution and injustice, can never receive the sanction of this court, or the approbation of a just and intelligent community.

To what good purpose has the Legislature defined punishment, and prescribed the quantum thereof, if the courts and juries are at liberty to disregard the former, or, in their discretion, pass the limits prescribed for the latter? Certainly not any. In this view of the subject, (and we think it is the only correct view of it which can be taken,) it is unimportant whether they undertake to mitigate or increase the punishment or fine: the one is as much a departure from the legal standard as the other. The former tends to favor, the latter to oppress, the person upon whom it is to operate. In either case, the law is violated, and public justice impaired or refused.

But if there remained any doubt upon this question, so far as it regards the present case, it is removed by a proviso in the 7th section of the City charter, where the question is fully met and answered. Said proviso is in these words: "Provided, that no person shall be deprived of his or her liberty, *or be fined except, for contempts, in any sum exceeding twenty dollars by said City Court*, unless previously convicted by a jury of twelve men, citizens of said City, qualified to vote at the elections of mayor and aldermen of said City."

It may, however, be supposed by some, that a fine of thirty dollars is authorized by the proviso to the 2d section of the act of 1829, the defendant below having plead guilty to the indictment. A simple reference to that proviso will show that it never was designed to apply to any case in the court, after indictment found. Its only object manifestly was, to authorize the Justice of the Peace, before whom any person was arrested, and brought under the provisions of said act, to impose a fine of not less than thirty nor more than fifty dollars, by way of summary conviction and punishment, without any regular or formal prosecution, in the usual and ordinary course of law; and cases prosecuted in the court are evidently not within the letter or spirit of its provisions.

We are, therefore, of the opinion, that the fine assessed in this case was illegal; and, the judgment of the court pronounced thereupon, erroneous. The judgment must, therefore, be reversed with costs, to be paid by the mayor and aldermen of the City of Little Rock; and inasmuch as the jurisdiction of said City Court, in criminal and penal cases, has been divested and transferred to the Circuit Court of the

county of Pulaski, by an act of the General Assembly, approved the 21st day of February, 1838, this case must be remanded to said Circuit Court of the county of Pulaski, for further proceedings therein to be had agreeably to law, and in conformity with this opinion.